**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/26/2020 3:06 PM**
**CLERK OF THE COURT**
**Leanne LeCompte**

STATE OF NEW MEXICO
BERNALILLO COUNTY
SECOND JUDICIAL DISTRICT COURT

MARJORIE CHILDRESS,

        Plaintiff,

v.                                case no.  <u>D-202-CV-2020-06929</u>

NATIONAL CONGRESS OF EMPLOYERS INC.,
BENEFYTT TECHNOLOGIES INC. f/k/a
HEALTH INSURANCE INNOVATIONS INC.
and Jane Does 1-5

        Defendants.

## COMPLAINT FOR VIOLATIONS OF THE UNFAIR PRACTICES ACT

## AND THE TELEPHONE CONSUMER PROTECTION ACT

TO THE HONORABLE COURT:

1.    Plaintiff Marjorie Childress ("Plaintiff") is a real person who can be contacted through her undersigned attorney.

2.    Defendant Benefytt Technologies Inc. (formerly known as Health Insurance Innovations Inc.) ("**HII**" or "Defendants") is a Delaware corporation that may be served a Summons by delivery to its registered agent: Corporation Service Company at 251 Little Falls Dr, Wilmington, DE 19808.

3.    National Congress of Employers Inc. ("NCE" or "Defendant") is a Delaware corporation that may be served a Summons by delivery to its registered agent: National Registered Agents

1

**EXHIBIT - A**

Inc. at 1209 Orange St., Wilmington, DE 19801.

4.      Defendants Jane Does 1-5 ("**Jane Does**" or "Defendants") are real persons or companies who substantially directed, controlled and participated with Defendants in the telemarketing conspiracy described herein that harassed Plaintiff, and that actually made or initiated the robocalls the subject of this Complaint.   Their identities and whereabouts will be discovered so that process can be duly served on them.

5.      Plaintiff and her telephone were in the State of New Mexico at the time of the unlawful telemarketing the subject of this Complaint.  Plaintiff resides in Bernalillo County.

6.      On the dates of the unlawful telephone solicitations described below, Defendants did business within New Mexico because Defendants or their agents regularly, automatically, repeatedly telephoned the phones of New Mexicans located within New Mexico for the purpose of advertising products and services.  Defendants authorized and approved telemarketing to sell products and services throughout the State of New Mexico.  By directing telemarketing phone calls into the forum state, Defendants made themselves subject to the specific personal jurisdiction of the courts of the forum state.   The Court  has subject matter jurisdiction.

**Defendants' robodialing conspiracy**

7.      Plaintiff has received repeated, numerous harrassive and unlawful prerecorded and automated telephone solicitation calls since the date twelve months prior to the filing of this action,

deceptively advertising the products and services of Defendants as "health insurance".**1**

8.      The calls to Plaintiff were made as part of a marketing scheme designed and primarily controlled by Defendant Health Insurance Innovations, Inc. ("**HII**"), and approved by Defendant National Congress of Employers Inc. ("**NCE**").  HII operates as an intermediary between insurance agents and call-centers on the one hand, and companies such as **NCE** on the other.

9.      **HII** contracts with marketing companies and insurance agencies to make outbound calls to potential customers like Plaintiff, in order to sell through HII the packaged products and services of **NCE**.

10.     During these phone calls with consumers, and at HII's design, control and request, the insurance agents and marketers access HII's web portal, which includes product and pricing information for NCE and the other participants.

11.     NCE has directly authorized HII to engage these marketers and insurance agents (the Jane Doe Defendants) to sell NCE's products and services.

12.     The Jane Doe Defendants that persistently robocalled and autodialed Plaintiff and that she dealt with were directly authorized to bind HII and NCE into contractual relationships with consumers.

_____

1   The FCC has defined "robocalls" as "calls that require consumer consent", including "calls made either with an automatic telephone dialing system ("autodialer") or with a prerecorded or artificial voice".  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order released on 7/10/15, 30 FCC Rcd. 7961 ("FCC 15-72"), footnote 1.

13.     During Jane Does' robocalls if a consumer indicates s/he is interested, calls are transferred to "closers," who take the consumer's demographic and health information and read special scripts that are provided by HII and approved by NCE to the consumers.

14.     The Jane Doe Defendants including the "closers" refuse to accurately identify themselves to auto-dialed consumers at any time.  Plaintiff had numerous conversations with Jane Does during their repeated calls, all of which lasted over fifteen (15) seconds, and they would give Plaintiff only fake names by which they could never be accurately identified and located.

15.     If a consumer asks the wrong questions during these auto-dialer calls or inquires too much before purchasing into who is actually responsible for the call, the Jane Doe Defendants just hang up the phone to continue their auto-dialing as usual.

16.     Once a consumer purchases and "enrolls" however, the Jane Doe Defendants then begin sending the consumer electronic communications and other documentation that clearly identifies HII and NEC as the Sellers and sponsors of the calls, and consumers are allowed access to their account information at websites owned and controlled by HII.

17.     To facilitate the telemarketing scheme described above, HII exercises control by allowing its outside sales entities including the Jane Doe Defendants who harassed Plaintiff, access to information and systems that normally would be within HII's exclusive control, including access to detailed information regarding the nature and pricing of HII's and NCE's products and services. NCE is aware of and ratifies this method of marketing by HII.

18.     To facilitate the telemarketing scheme described above, HII exercises control by giving its outside sales entities including the Jane Doe Defendants who harassed Plaintiff the ability to enter

consumer information into HII's sales or customer systems.  NCE is aware of and ratifies this method of marketing by HII.

19.     Because of the access to its internal operating systems including its web portal for customers that HII gave the Jane Doe Defendants herein who harassed Plaintiff, which the Jane Doe Defendants then gave Plaintiff after she expressed interest and "enrolled",  HII and NCE are identified as the sellers and sponsors vicariously responsible for the calls.

20.     The information and products Plaintiff received directly from HII and the Jane Doe Defendants immediately after agreeing to give them money and "enrolling", demonstrate a direct connection between HII, NCE and the robocalls the subject of this Complaint because after agreeing to pay money and "enrolling" solely as a means of identifying Defendants, consumers are given access to HII's internal operating systems including its web portal for customers with login and password information.   Now Plaintiff can show the finder of fact specifically what products and services HII and NCE deliver immediately after their agents promise robo-called consumers "health insurance".

21.     The Jane Doe Defendants that place the initial calls during which NEC's and HII's products and services are sold, including the calls at issue to Plaintff, do not have internal Do Not Call policies or compliance procedures that are required by both the FTC's Telemarketing Sales Rule ("the TSR") and the Telephone Consumer Protection Act's ("TCPA") implementing regulations, or alternatively they do not adhere to the policies or procedures that exist.

22.     Companies are not permitted to accept business derived from telemarketing calls unless they and their telemarketers have implemented and adhere to a valid Do Not Call policy and other compliance procedures.

23.     Minimal oversight by NCE and HII would confirm for them that their agents the Jane Does systematically, regularly, daily violate the TCPA and the TSR by failing to have or implement any compliance procedures such as use of the National Do-Not-Call Registry ("the Registry"), but NCE and HII choose to remain consciously or recklessly indifferent to the behavior of their agents the Jane Does.  NCE and HII do not take adequate steps to ensure that the entities making calls to sell their products and services adhere to the requirements of the TCPA and the TSR.

24.     Defendants operate and profit from a common enterprise consisting of a conspiracy to use large amounts of unlawful robocalling to sell a type of limited medical benefit or indemnity plan they know the Jane Does deceptively imply in their robocalls is comprehensive or major medical "health insurance".

25.     Mass-marketing by robocall results in consumer complaints.  NCE and HII based on the numbers of consumer complaints to and about their telemarketers the Jane Doe Defendants had an actual awareness or should have an actual awareness that their agents actually making or initiating their calls use autodialers directed to people who object to the calls, did not consent to them, and whose telephone numbers are listed on the National Do-Not-Call Registry.

26.     Additional reason NCE and HII had an actual awareness or should have an actual awareness that their agents actually making or initiating their calls use auto-dialers directed to people who object to the calls, did not consent to them, and whose telephone numbers are listed on the National Do-Not-Call Registry, is that selling rip-off limited benefit or discount savings plans with the misrepresentation that it is standard "health insurance", also results in numerous consumer complaints, including complaints about the sales methods used and the misrepresentations made as part of the sales.    The evidence will show large numbers of credit

card charge-backs, disputes and early cancellations of the sales Jane Does made of Defendants'
alleged "health insurance" including NCE "memberships",  as a result of consumers being
unhappy with the product they actually received after being told it was "health insurance".

27.     NCE and HII knew or consciously avoided knowing their agents or co-conspirators, the
Jane Doe Defendants herein, were engaged in the unlawful conduct described below that violated
the TCPA and the FTC's Telemarketing Sales Rule ("the TSR").  While knowing or consciously
avoiding knowing the same, NCE and HII continued to conspire with and provide substantial
assistance or support to the Jane Doe Defendants in continuance of their illegal robo-calling
conspiracy that repeatedly unlawfully harassed Plaintiff.   NCE and HII condone and rely on the
robo-calling, the auto-dialing and the misleading sales pitch used to peddle alleged "health
insurance" because their officers, directors and managers profit from and are personally enriched
by the same.

28.     The products Defendants are telemarketing, when compared with the standardized
telemarketing sales scripts all the Defendants  know are being used to sell them,  are rip-offs.[2]

29.     In an article published by the National Association of Insurance Commissioners' *Journal
of Insurance Regulation* the author noted cases in which consumers were led to believe they had
purchased comprehensive insurance when in fact they were sold merely a limited benefit or
discount savings plan.[3]  Defendants prey on gullible and inexperienced consumers who seek

---

2  See K. Lucia, J. Giovannelli, S. Corlette et al., describing versions of these limited benefit or indemnity
plans and how they undermine markets for actual affordable health insurance IN:  "*State Regulation of
Coverage Options outside the Affordable Care Act: Limiting the Risk to the Individual Market*", The
Commonwealth Fund, March 2018.

affordable health insurance.

30.     Defendants use robo-calling because it allows for thousands of automated sales calls to be initiated in a very short period of time but their sales representatives only need actually spend time on the phone with consumers who respond positively.  Defendants thereby illegally shift the cost of aggravation and wasted time to the public at large and away from themselves where it belongs.

**The Illegal Phone Calls to Plaintiff that Defendants are Responsible For**

31.     Plaintiff uses for her personal or residential purposes a wireless or cell phone assigned the number **505-501-3610**.

32.     Jane Does have repeatedly unlawfully called Plaintiff's cell phone with an automatic telephone dialing system ("auto-dialer") as part of the telemarketing scheme described above.

33.     Jane Does have repeatedly unlawfully called Plaintiff's cell phone using a pre-recorded message or artificial voice as part of the telemarketing scheme described above.

34.     If Plaintiff answered any of these calls a prerecorded message or artificial voice greeted her that attempted to interest her in "health insurance".   The prerecorded message or artificial voice gave her an option to be transferred to a live telemarketer who would continue to attempt to interest Plaintiff in "health insurance".

35.     Plaintiff states all the calls referred to above were made with auto-dialers because all the live telemarketers she was ever transferred to did not appear to  know Plaintiff's name and they

---

3   "Association Health Insurance:  Is it Time to Regulate this Product?", Kofman and Lucia, Fall 2005
    Vol. 24, No. 1 at p. 39.

only spoke at Plaintiff with a standardized, scripted sales pitch that was not designed or intended for Plaintiff in particular but rather for mass-marketing in general.

36.     Plaintiff states all the calls referred to above were made with auto-dialers because, again, if she answered she only heard a prerecorded message or artificial voice.  The use of a prerecorded message or artificial voice is a tell-tale indicator of automated mass-marketing.  If a real person were manually dialing phone numbers, this actual human being would not just play a recording to consumers who answer the calls.

37.     Anytime Plaintiff spoke to a live telemarketer the live telemarketer would only identify the caller with the fake name "National Enrollment Center" by which the caller (Jane Doe) could not be accurately identified or located.  All these conversations were over 15 seconds long.

38.     Defendants' calls caused Plaintiff's phone's Caller ID to display different calling numbers in all the calls.  Defendants' calls criminally-spoofed Plaintiff's Caller ID, meaning the Defendants circumvented Plaintiff's Caller ID by causing it to display phone numbers that could not be called back to reach Defendants or to identify Defendants.

39.     On December 1, 2020 Defendants' Jane Doe agent harassed Plaintiff again with another robocall.  Solely to accurately identify and locate the Defendants responsible for the illegal auto-dialer calls described above, this time Plaintiff answered and decided to listen to the standardized deceptive and misleading sales pitch and buy the alleged "health insurance" that was offered.

40.     Plaintiff was "enrolled" and then Defendants gave her access to HII's web portal and sent her the standard pieces of paper Defendants send consumers who "enroll" as a result of Defendants' telemarketing scheme.

41.     Immediately upon "enrolling" in what had been represented by the Jane Does to Plaintiff would be a "health insurance" plan, Jane Does caused HII to send and Plaintiff received, by email, the communications and information attached hereto as **Exhibit 1** in support of this Complaint.

42.     A few days later Plaintiff received by USPS mail the originals of the items at **Exhibit 2** in support of this Complaint.

43.     "mybk.com" and "My Benefits Keeper" is HII's customer portal and billing system.

44.     "Health Choice +" is the name HII gave the benefits package which comprises "membership" in NCE.

### More Facts

45.     Plaintiff's cell phone number referred to above that Defendants  repeatedly robocalled, has at all relevant times been continuously listed on the National Do-Not-Call Registry ("the Registry").

46.     Telemarketers are required by law to subscribe to and comply with the Registry.  NMSA § 57-12-22(C);   47 U.S.C. § 227(C)(3)(F-G);  16 C.F.R. Part 310;  47 C.F.R. § 64.1200(c).

47.     Defendants did not subscribe to or comply with the Registry at the times of the calls the subject of this Complaint, as required by law, and could not care less that any particular phone number may be listed on the Registry.

48.     Plaintiff never consented to being autodialed or robocalled by Defendants or their agents.

49.     Plaintiff has never had any prior relationship with Defendants.

50.     Defendants' calls complained of herein aggravated and harrassed Plaintiff, wasted her time, invaded her privacy, disrupted her days, were an obnoxious nuisance and cost her electricity to re-charge her phone.

10

51.     Defendants had the authority and responsibility to prevent or correct the unlawful telemarketing practices that are the subject of this Complaint.

52.     Defendants formulated, directed, controlled and participated in the unlawful telemarketing practices that are the subject of this Complaint.

53.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was knowing and willful.

54.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was intentional, conscious, deliberate and volitional.

55.     All the calls to Plaintiff the subject of this Complaint occurred within a single 12-month time period.

56.     NCE has a long history of marketing its "memberships" with what it knows is false, misleading and deceptive advertising.   As but one example see the detailed facts set forth in the Complaints, which discovery will easily confirm, in *Wiedenbeck v. National Congress of Employers et al*, case no. 3:12-cv-508 in the US District Court for the Western District of Wisconsin.   NCE and HII have both been repeatedly sued in courts across the USA for their unlawful telemarketing practices, but their behavior has not changed.

57.     Membership benefits provided by NCE are de minimus in comparison to its annual gross revenues and are intended only to provide the bare veneer of a non-profit association that does something more than sell "insurance".

58.     NCE operates by signing marketing contracts with companies like HII.  NCE also engages in television advertising.

59.     Defendants are directly liable and responsible for the phone calls at issue made to Plaintiff.

Alternatively Defendants are vicariously liable because they:

      a)      authorized the calls;

      b)      directly or indirectly controlled the persons who actually made or initiated the calls;

      c)      allowed the caller(s) access to information and operating systems within Defendants' control for the purpose of selling goods and services;

      d)      allowed the caller(s) to enter consumer information into Defendants' sales or customer systems;

      e)      approved, wrote or reviewed the telemarketing sales script;

      f)      Defendants reasonably should have known that the actual caller(s) were violating the TCPA, the UPA and the TSR and Defendants failed to take effective steps within their power to require compliance with the TCPA, the UPA and the TSR;  OR

      g)      Defendants gave substantial assistance or support to the other Defendants and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that they or their agents were engaged in acts or practices that violated the TCPA, the UPA and/or TSR.

60.     Defendants ratified the robocalls to Plaintiff described above because they accepted and intended the benefits to them of the calls while knowing or consciously avoiding knowing their telemarketer-agents were autodialing cell phones and using artificial or prerecorded voices messages in unsolicited calls to cell phones.

61.     Jane Does apparently had authority of HII and NCE for their conduct directed at Plaintiff because upon Plaintiff's "enrollment" described above Plaintiff received a NCE "membership" and access to HII's "My Benefits Keeper".

FIRST SET OF CLAIMS FOR RELIEF  -  UPA Violations

62.      Plaintiff hereby brings this action pursuant to the New Mexico Unfair Practices Act ("the

UPA") to recover her statutory damages for each violation of the UPA and her attorney fees.  As

set forth above Defendants' conduct was knowing and/or willful therefore Plaintiff is entitled to

and should be awarded treble her statutory damages.

63.      Each call to Plaintiff from Defendants the subject of this matter distinctly violated NMSA

§57-12-22(A), §57-12-22(B)(1) and §57-12-22(C)(1).   The statutory damages should be awarded

("stacked") for each and every violation of the statute.

64.      Defendants calls described above also distinctly violated  NMSA  §57-12-22(C)(2).

65.      Each call to Plaintiff from Defendants the subject of this matter was also an actionable

unfair or deceptive trade practice because each call violated 16 C.F.R. § 310.4 (the Telemarketing

Sales Rule or "TSR").

66.      The calls to Plaintiff described above were abusive because Defendants, instead of

identifying themselves during the calls as required by law, refused to do so thus forcing Plaintiff

to identify the Defendants herself.    Plaintiff incurred actual damages necessary to do so consisting

of the cost of "enrolling" in NCE membership.

67.      Defendants additionally distinctly violated the UPA because   pursuant to 16 C.F.R.

§310.3(b):

> "It is a deceptive telemarketing act or practice and a violation of this Rule for a
> person to provide substantial assistance or support to any seller or telemarketer
> when that person knows or consciously avoids knowing that the seller or
> telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or
> §310.4 of this Rule."

68.     Defendants represented that goods or services had characteristics, uses, benefits or quantities they do not have and Defendants' representations they were selling "health insurance" were the kind that may, tend to or do deceive or mislead.

69.     Defendants  represented that goods or services are of a particular standard, quality or grade when they are of another and Defendants' representations they were selling "health insurance" were the kind that may, tend to or do deceive or mislead.

SECOND SET OF CLAIMS FOR RELIEF  -  Violations of the TCPA's Subsection B

70.     The foregoing acts and omissions of Defendants or their agents on their behalf constitute multiple violations of  47 U.S.C. § 227(b) and its implementing regulations.

71.     Plaintiff is entitled to and should be awarded against Defendants $500 in damages for each and every violation of the TCPA's Subsection B and its implementing regulations. Because Defendants' conduct set forth above was knowing and/or willful Plaintiff is entitled to and should be awarded treble damages of up to $1,500 for each and every violation.


THIRD SET OF CLAIMS FOR RELIEF  -  Violations of the TCPA's Subsection C

72.     Defendants or Defendants' agents on Defendants' behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact her phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times.

73.     For each of Defendants' calls to Plaintiff the subject of this Complaint, Plaintiff should recover up to an additional $1500 pursuant to 47 U.S.C. § 227(c).

WHEREFORE, Plaintiff prays for entry of judgment for  -   her statutory, actual, treble and/or nominal damages;  for punitive or exemplary damages sufficient in size to set an example and deter in the future the conduct complained of by Defendants or others;  and for such other and further relief as the court deems  just,  proper  and  lawful.   Plaintiff requests an award of her attorney fees and costs.

RESPECTFULLY  SUBMITTED,

By:   /s/  Sid  Childress
_____
Sid Childress, Lawyer
1925  Aspen  Dr.  #600A
Santa  Fe,  NM  87505
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff